50 P.3d 668 (2002)
The MUCKLESHOOT INDIAN TRIBE, Appellant,
v.
The WASHINGTON DEPARTMENT OF ECOLOGY, Thomas Fitzsimmons; in his official capacity as Director of the Washington Department of Ecology; The State of Washington; and the City of Seattle, Respondents.
No. 49650-6-I.
Court of Appeals of Washington, Division 1.
July 29, 2002.
*671 Gregory M. O'Leary, Robert Leighton Otsea, Seattle, WA, for Appellant.
Quentin R. Yerxa, Seattle, WA, Barbara A. Markham, Jay Douglas Geck, Assistant Attorney General, Olympia, WA, for Respondents. *669
*670 BAKER, J.
In a petition for review under the Washington Administrative Procedure Act[1] (WAPA), the Muckleshoot Indian Tribe challenged the Department of Ecology's authority to make certain concessions in a multi-agency agreement governing the City of Seattle's diversion of water from the Cedar River. The agreement was the result of a six year negotiation among the City, several state and federal agencies, and the Muckleshoot Indian Tribe. All the parties except the U.S. Army Corps of Engineers and the Muckleshoot Tribe signed the agreement. The trial court dismissed the Tribe's petition on summary judgment. Because the Tribe's failure to serve its petition on the federal signatories to the agreement barred the superior court from accepting appellate review, we affirm.

I
For the better part of a century, the City of Seattle has diverted water from the Cedar River for use by Seattle residents and for sale to water purveyors. Over the years, the escalating population of Seattle has required it to divert an increasing amount of water, which has correspondingly placed a greater burden on fish habitat. The City's water use affected the responsibilities of the Washington State Department of Fish and Wildlife, which has regulatory authority over fish and wildlife resources within the state; the National Marine Fisheries Service and the U.S. Fish and Wildlife Service, which have regulatory authority to provide for the conservation of species listed under the Endangered Species Act; and the Muckleshoot Indian Tribe, which has treaty fishing rights on the Cedar River. Eventually, the State Department of Ecology, which has general authority to manage the state's water resources, intervened.
To reconcile the City's need for water and the other parties' interests in preserving fish habitat, fish species, and fishing rights, a committee composed of representatives from the City, the state and federal agencies, the U.S. Army Corps of Engineers, and the Muckleshoot Tribe met periodically over the course of six years to exchange technical information and negotiate flow levels that would accommodate the City but provide sufficient flow for fish habitat and navigation. Eventually, all the participants except the Army Corps of Engineers and the Tribe signed an Instream Flow Agreement (IFA) establishing minimum flow requirements.
The Tribe opposes a specific provision in the IFA in which Ecology, in exchange for the City's commitment to maintain certain flow levels and to restore fish habitat, agreed not to use its regulatory authority to alter the flow requirements set forth in the agreement for the 50-year term of the agreement. The Tribe filed a petition for judicial review under the Washington Administrative Procedure Act (WAPA),[2] but did not serve the *672 petition on the federal signatories to the IFA.
The City moved for summary judgment, asserting that because the Tribe failed to serve the federal agencies, the superior court lacked subject matter jurisdiction to review the petition. It also claimed that the Tribe failed to join indispensable parties under CR 19. The trial court granted the motion. The Tribe appeals.

II
The Washington Administrative Procedure Act allows an aggrieved party to challenge an agency action by filing a petition for judicial review with the court and serving a copy of the petition on all parties of record within 30 days after the agency action.[3] An agency action is defined as:
[The] licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits.
Agency action does not include an agency decision regarding (a) contracting or procurement of goods, services, public works, and the purchase, lease, or acquisition by any other means, including eminent domain, of real estate, as well as all activities necessarily related to those functions, or (b) determinations as to the sufficiency of a showing of interest filed in support of a representation petition, or mediation or conciliation of labor disputes or arbitration of labor disputes under a collective bargaining law or similar statute, or (c) any sale, lease, contract, or other proprietary decision in the management of public lands or real property interests, or (d) the granting of a license, franchise, or permission for the use of trademarks, symbols, and similar property owned or controlled by the agency.[4]
Ecology's agreement with the City may be characterized as an implementation of RCW 90.22.010 and chapter 90.03 RCW, which authorize Ecology to establish minimum water flows in public waters to protect fish, game, birds or other wildlife resources, and to appropriate water rights, respectively.[5] But it is not clear whether the IFA is excluded from the definition of agency action because it may be characterized as a contract in the management of public lands or real property interests. If the IFA is excluded from review under the act, then we have no jurisdiction to resolve the issues presented. We asked for additional briefing on the issue.
The Tribe now argues that the IFA and Ecology's commitments contained therein are expressly excluded from review under the WAPA because the IFA is a proprietary contract governing interests in real property, i.e., water rights.[6] The parties agree that the term "proprietary" in the phrase, "sale, lease, contract or other proprietary decision" modifies all the terms preceding it. The Tribe therefore suggests that its appeal be dismissed without prejudice so that it may pursue its requested relief under a constitutional writ of review. Ecology contends that the IFA is not proprietary in nature.
Washington courts have not interpreted this portion of the statute. Judicial interpretation of a statute is a question of law that we review de novo under an error of law standard.[7] When a court interprets a statute, it does not construe an unambiguous statute because plain words do not require construction.[8] A statute is ambiguous if it is *673 susceptible to more than one meaning or reasonable interpretation.[9] Here, the exclusionary clause is ambiguous, first because it is not clear that "proprietary" modifies the word "contract." Second, the word "proprietary" has multiple definitions and the Legislature did not indicate which meaning it intended to apply.
When interpreting an ambiguous statute, we will construe it so as to effect the intent of the Legislature within the context of the entire statute.[10] All language within the statute must be given effect so that no portion is rendered meaningless or superfluous.[11] A court does not glean the meaning of a particular word from that word alone, but rather from the Legislature's intent within the statute as a whole.[12] Where possible, provisions of an act will be harmonized to ensure proper construction of each provision.[13] And the meaning of a specific term will be taken from the context in which it is employed.[14] In this process, courts seek to avoid strained, unlikely, or unrealistic consequences.[15]
The Legislature declared that its purpose in adopting the WAPA was to provide greater public and legislative access to administrative decision making.[16] It also intended to achieve more consistency with other states and the federal government in administrative procedures.[17] To that end, the Legislature instructed that the act should conform to the decisions of federal and other state courts and with the model state administrative procedure act.[18] But no authority outside Washington assists us, because no other state's administrative review act contains the exclusion at issue here.[19]
The comments to the model act are helpful in explaining the scope and purpose of its all encompassing definition of "agency action:"
"[A]gency action" includes everything and anything else that an agency does or does not do, whether its action or inaction is discretionary or otherwise.... The principal effect of the very broad definition of "agency action" is that everything an agency does or does not do is subject to judicial review.[[20]]
Consistent with the Legislature's intent that the public have greater access to administrative decision making and its express direction that our decisions conform to those of other states and the model act, we will interpret the WAPA's definition of "agency action" to apply broadly and construe narrowly any exclusions from it.[21]
*674 We thus agree with the parties that in the phrase, "sale, lease, contract, or other proprietary decision," the term "proprietary" modifies all the terms preceding it. The words "or other" are terms of relation. Moreover, qualifying the types of contracts excluded from the act reduces the number of contracts barred from review under the WAPA. Only proprietary contracts in the management of public lands or real property interests are excluded from the definition of agency action.
Ecology and the City contend that the IFA is clearly not a proprietary contract. They assert that "proprietary," in this context, refers to the doctrine of a government's sovereign immunity from citizen lawsuit. Both the federal government and the states, as sovereign entities, enjoy complete immunity from citizen suit, unless they consent to be sued.[22] But municipal corporations, because they function both as governmental subdivisions of the state and as private corporations, have a dual character.[23] If a municipality acts in its governmental capacity, it is immune from suit; but if it acts as a corporation, it can be held liable for those "proprietary" acts.[24] Our supreme court has applied the governmental/proprietary analysis to state actions as well.[25]
But the term "proprietary" has also long been used in the different context of the state's management of public lands. In State v. Superior Court for Jefferson County,[26] the supreme court explained that the state holds title to property in two distinct capacities:
[T]he one a proprietary capacity, as individuals generally hold property, and the other a governmental capacity, that is, in trust for the public use.[[27]]
Thus, when the state is authorized by statute to dispose of state property, it may only dispose of property in which it has a proprietary interest, unless the statute expressly states otherwise.[28]
In Superior Court, a railroad company sought to condemn state tidelands which had been platted for streets and dedicated for public use, but had not yet been developed.[29] The court held that the state could not dispose of the tidelands in that manner because the lands had:
"[T]hus become segregated from the general mass of the state's lands which it holds in its proprietary capacity, and become vested in that special class which it holds specially for the public use."[[30]]
The WAPA excludes from judicial review an agency's proprietary decision concerning public lands or real property interests. *675 We conclude that the meaning of the term "proprietary" in this context refers to agency decisions concerning real property it holds in its proprietary capacity. Such decisions do not constitute agency action subject to review under the WAPA. But if the agency decision concerns real property held in trust for the public use, the exclusion does not apply, and the decision is governed by the review provisions of the WAPA.
Whether the state owns real property in a proprietary or stewardship capacity is governed by statute. The Public Lands Act defines public lands as lands "belonging to or held in trust by the state, which are not devoted to or reserved for a particular use by law...."[31] It expressly enumerates those lands held in public trust.[32] Similarly, Washington's Water Code provides that, "Subject to existing rights, all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use...."[33] Further, any beneficial use of water is a public use.[34] Thus, the state's waters are held in trust by the state and any disposition of water rights occurs in the state's capacity as a trustee for the benefit of the public.
The Department of Ecology is the agency that holds the exclusive authority to appropriate water rights and to establish minimum water flows in streams or lakes.[35] Consequently, any acts of Ecology in managing state waters dedicated for the public use is in its capacity as trustee. Ecology, in executing the IFA and making certain commitments concerning water flow obligations, was acting as trustee of the state's waters. The IFA is therefore not proprietary in nature and is reviewable under the WAPA.

III
The Tribe argues that its failure to serve the federal agencies that signed the IFA is not fatal to its petition for review. We review an order on summary judgment de novo, performing the same inquiry as the trial court.[36] A motion for summary judgment may be granted only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[37] In this case, the sole issues on appeal are questions of statutory interpretation, which are questions of law.[38]
The WAPA authorizes the superior court to act in a limited appellate capacity to review certain agency actions.[39] In order for the court's appellate jurisdiction to be properly invoked, parties must abide by all the procedural requirements of the act.[40] The act obliges a party appealing an agency action to file a petition for review in the superior court and to serve the petition "on the agency, the office of the attorney general, and all other parties of record within thirty days after the agency action...."[41] Failure to comply with these requirements bars the superior court from accepting appellate review for lack of subject matter jurisdiction.[42]
The Tribe claims that it was not required to serve the federal signatories to the IFA because they were not "parties of record" as defined by the WAPA. A party of *676 record in the context of an agency proceeding is:
a) A person to whom the agency action is specifically directed; or
b) A person named as a party to the agency proceeding or allowed to intervene or participate as a party in the agency proceeding.[43]
The Tribe first asserts that federal agencies are not "persons." The WAPA defines a "person" as:
[A]ny individual, partnership, corporation, association, governmental subdivision or unit thereof, or public or private organization or entity of any character, and includes another agency.[[44]]
We note that the federal agencies cannot be "another agency" under the definition because "agency" is further defined by the WAPA as only state entities.[45] But the Tribe argues that neither can the federal agencies constitute any "governmental subdivision," or "public organization," or "an entity of any character," because, under the doctrine of ejusdem generis, these entities must also be state entities.
Ejusdem generis is a canon of statutory interpretation, which provides that "where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated."[46] For example, in a statute granting the Department of Conservation the authority to sell "gravel, sand, earth or other material" from state-owned land, the term "other material" cannot include commercial timber harvested on state parkland because timber is not in the same general category as gravel, sand, and earth.[47] Courts apply the doctrine only when a statute is ambiguous and contains the following characteristics: a) an enumeration of specific words that b) suggest a class, c) which is not exhausted by the enumeration, and d) is followed by a general reference.
Here, there is no ambiguity. Each entity listed in the definition is unrelated and requires no reference to other terms to be plainly understood. The federal agencies are "persons" because they are governmental subdivisions, or public organizations, or entities of any character.
The Tribe alternatively argues that the federal agencies cannot be considered "persons" under the WAPA because sovereign immunity prevents the state from being able to regulate federal entities through the WAPA. The Tribe misapprehends the concept of sovereign immunity, "which precludes bringing suit against the government without its consent."[48] The only actions subject to judicial review under the WAPA are those undertaken by state actors.[49] The act neither regulates nor attempts to subject to state judicial review any action by a federal governmental body. The purpose of the broad service of process requirement under RCW 34.05.542(3) is not to join the parties as defendants in the judicial review process, but to afford notice to all persons who were parties to the agency proceeding itself.[50] The federal agencies in this case are "persons" under the WAPA.
The Tribe next argues that service is required only on persons "to whom the agency action is specifically directed," and the IFA was not specifically directed to the federal *677 agencies.[51] We need not reach this issue because the WAPA also defines parties of record as those who are "named as a party to the agency proceeding or allowed to intervene or participate as a party in the agency proceeding."[52] In this case, the federal agencies satisfy the requirement because they both participated in negotiations and signed the IFA.
The Tribe claims that the federal agencies cannot qualify as "parties to an agency proceeding" because the negotiation and execution of the IFA was not an "agency proceeding." The WAPA does not define the term "agency proceeding" and Washington courts have not had occasion to address the issue. When a term in a statute is not defined, we will give the words their ordinary meaning, which may be derived from a dictionary definition.[53] If the term is susceptible to more than one interpretation, we will adopt the interpretation which best promotes the purpose of the statute.[54]
Here, the Tribe relies on a partial definition of "proceeding" from Black's Law Dictionary, which defines it as:
[T]he form and manner of conducting juridical business before a court or judicial officer. Regular and orderly progress in form of law, including all possible steps in an action from its commencement to the execution of judgment.[[55]]
But Black's also states that a proceeding may be simply "[a]n act which is done by the authority or direction of the court, agency, or tribunal, express or implied...."[56]
This broader definition is consistent with the general dictionary definition of "proceeding," which is simply, "a particular way of doing or accomplishing something" and "a particular action or course of action."[57] These definitions broaden the meaning of "proceeding" beyond the formal action described by the Tribe. In this case, the Legislature inserted no language in its definition of "party" that would limit the scope of "agency proceedings" to only formal, adjudicative processes.[58] We hold that an agency proceeding constitutes any agency action that is reviewable under the WAPA.
We likewise reject the Tribe's argument that the federal agencies could not be "parties of record" entitled to service because they were not "of record." As signatories to the IFA, the federal agencies are "of record."
In sum, we hold that the federal agencies were parties of record entitled to service of the Tribe's petition for review. Because the petition was not served on the federal agencies, the superior court lacked subject matter jurisdiction to review the IFA and properly dismissed the petition. Because of our holding, we need not decide whether the federal agencies were indispensable parties under CR 19.
AFFIRMED.
WE CONCUR: APPELWICK and SCHINDLER, JJ.
NOTES
[1] Ch. 34.05 RCW.
[2] It also filed a declaratory judgment action, which was dismissed. The Tribe does not appeal from this portion of the order on summary judgment.
[3] RCW 34.05.542(3).
[4] RCW 34.05.010(3) (emphasis added).
[5] This statement is not intended to imply any substantive determination of whether Ecology's act is valid under the chapters.
[6] It is well established that "a water right, or an interest in a water right, is real property, and it is so treated under all the rules of law appertaining to such property." Madison v. McNeal, 171 Wash. 669, 675, 19 P.2d 97 (1933) (quoting 2 Kinney on Irrigation and Water Rights (2d ed.), p. 1328). The IFA limits the City's right to take water from the Cedar River by requiring the City to maintain certain flow levels in the river. It is a contract concerning the management of interests in real property.
[7] State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996).
[8] Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) (citing Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996)).
[9] Washington Fed'n of State Employees v. State Personnel Bd., 54 Wash.App. 305, 309, 773 P.2d 421 (1989).
[10] Davis, 137 Wash.2d at 963, 977 P.2d 554 (citing Whatcom County, 128 Wash.2d at 546, 909 P.2d 1303).
[11] Davis, 137 Wash.2d at 963, 977 P.2d 554 (citing Whatcom County, 128 Wash.2d at 546, 909 P.2d 1303).
[12] Davis, 137 Wash.2d at 963, 977 P.2d 554 (citing Whatcom County, 128 Wash.2d at 546, 909 P.2d 1303).
[13] State v. Pesta, 87 Wash.App. 515, 521, 942 P.2d 1013 (1997).
[14] City of Mercer Island v. Kaltenbach, 60 Wash.2d 105, 109, 371 P.2d 1009 (1962).
[15] Pesta, 87 Wash.App. at 521, 942 P.2d 1013.
[16] RCW 34.05.001.
[17] RCW 34.05.001.
[18] RCW 34.05.001.
[19] See, e.g., federal APA definition of "agency action:" "[T]he whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C.A. § 551(13). (The terms in this definition are further broadly defined in 5 U.S.C.A. 551(4)(11)); Kansas' Administrative Procedure Act defines "agency action" as:

"(1) The whole or a part of a rule and regulation or an order;
(2) the failure to issue a rule and regulation or an order; or
(3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise."
KS ST § 77-602 (Kan.1984) (emphasis added); The Model State Administrative Procedure Act defines agency action simply as either a rule or an order or "an agency's performance of, or failure to perform, any other duty, function, or activity, discretionary or otherwise." ULA ADMIN P 1981 § 1-102(2)(iii).
[20] ULA ADMIN P 1981 § 1-102, Comment.
[21] See also, R.D. Merrill Co. v. Pollution Control Hearings Bd., 137 Wash.2d 118, 140, 969 P.2d 458 (1999) (in general, courts narrowly construe exceptions to statutory provisions to effect legislative intent underlying general provisions).
[22] William L. Prosser, Torts § 131, at 971, 975 (4th ed.1971). This immunity has long since been abrogated by the enactment of state and federal statutes giving the requisite consent.
[23] Prosser, supra, at 977; City of Seattle v. Stirrat, 55 Wash. 560, 564, 104 P. 834 (1909) ("A municipal incorporation possesses a two-fold character. It exercises under a grant or charter a part of the sovereign power of the state, but in thus exercising its power and to promote the ends of government and the convenience of its inhabitants, it may, and frequently does, act as an agent for the citizen.").
[24] Prosser, supra, at 977-78; Owen v. City of Independence, Mo., 445 U.S. 622, 648, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) ("The governmental-proprietary distinction owe[s] its existence to the dual nature of the municipal corporation.").
[25] See Strand v. State, 16 Wash.2d 107, 109, 115, 132 P.2d 1011 (1943) (state equitably estopped from challenging title of citizen to portion of tidelands otherwise belonging to state); Board of Regents of University of Washington v. City of Seattle, 108 Wash.2d 545, 551, 741 P.2d 11 (1987); Metropolitan Park Dist. v. State, 85 Wash.2d 821, 827-28, 539 P.2d 854 (1975) (state estopped from canceling use deed on state tidelands); Finch v. Matthews, 74 Wash.2d 161, 175, 443 P.2d 833 (1968); Shaferv. State, 83 Wash.2d 618, 521 P.2d 736 (1974).
[26] 91 Wash. 454, 157 P. 1097 (1916).
[27] State v. Superior Court, 91 Wash, at 458, 157 P. 1097.
[28] State v. Superior Court, 91 Wash, at 458-59, 157 P. 1097.
[29] State v. Superior Court, 91 Wash, at 455, 157 P. 1097.
[30] State v. Superior Court, 91 Wash, at 459, 157 P. 1097. See also, Harris v. Hylebos Industries, Inc., 81 Wash.2d 770, 505 P.2d 457 (1973) (state owned tidelands in its proprietary capacity and deeded them in fee simple to defendant).
[31] RCW 79.01.004 (emphasis added).
[32] RCW 79.01.004.
[33] RCW 90.03.010, .015; ch 90.03 RCW.
[34] RCW 90.03.040.
[35] RCW 90.03.247, .010, .015.
[36] Herron v. Tribune Publ'g Co., Inc., 108 Wash.2d 162, 169, 736 P.2d 249 (1987).
[37] CR 56(c).
[38] State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996).
[39] Union Bay Preservation Coalition v. Cosmos Dev. & Admin. Corp., 127 Wash.2d 614, 617, 902 P.2d 1247 (1995) (citing City of Seattle v. Public Employment Relations Comm'n, 116 Wash.2d 923, 926, 809 P.2d 1377 (1991)).
[40] Union Bay, 127 Wash.2d at 617, 902 P.2d 1247 (citing City of Seattle v. Public Employment Relations Comm'n, 116 Wash.2d at 926, 809 P.2d 1377).
[41] RCW 34.05.542(3).
[42] Union Bay, 127 Wash.2d at 617, 902 P.2d 1247.
[43] RCW 34.05.010(12); Litowitz v. Central Puget Sound Growth Mgmt. Hearings Bd., 93 Wash. App. 66, 69, 966 P.2d 422 (1998) (parties requiring service include all parties in agency proceeding, not only those named in a judicial review proceeding).
[44] RCW 34.05.010(14).
[45] RCW 34.05.010(2).
[46] Black's Law Dictionary 517 (6th ed.1990).
[47] 2A Norman J. Singer, Statutes and Statutory Construction § 47.17, at 282 (6th ed.2000) (citing Sierra Club v. Kenney, 88 Ill.2d 110, 57 Ill.Dec. 851, 429 N.E.2d 1214 (1981)).
[48] Black's Law Dictionary, Sixth Ed. (1990) p. 1396.
[49] RCW 34.05.542; RCW 34.05.010(2) and (3).
[50] RCW 34.05.010(12). Litowitz, 93 Wash.App. at 69, 966 P.2d 422. See also, ULA ADMIN P 1981 § 1-102, Comment, "[T]he definition of `party to agency proceedings' in paragraph (6) is not intended to address the question of whether a person is entitled to judicial review."
[51] RCW 34.05.010(12).
[52] RCW 34.05.010(12).
[53] One Pacific Towers Homeowners' Ass'n. v. HAL Real Estate Investments, Inc., 108 Wash. App. 330, 340, 30 P.3d 504 (2001).
[54] One Pacific Towers, 108 Wash.App. at 341, 30 P.3d 504.
[55] Black's Law Dictionary 1204 (6th ed.1990).
[56] Black's Law Dictionary 1204 (6th ed.1990).
[57] Webster's Third New International Dictionary 1807 (1990).
[58] RCW 34.05.010(12)(b).