[No. 52250-7-I.   Division One.   November 29, 2004.]

STATE OWNED FORESTS, ET AL., *Respondents*, v. DOUG
SUTHERLAND, *as Commissioner of Public
Lands*, ET AL., *Petitioners*.

*James R. Johnston* and *Galen G.B. Schuler* (of *Perkins Coie, L.L.P.*), for petitioner American Forest Resource Council.

*John C. Bjorkman, Grace T. Yuan*, and *Jonah Harrison* (of *Preston Gates & Ellis, L.L.P.*), for petitioner Bethel School District.

*Christine O. Gregoire, Attorney General*, and *Philip M. Ferester* and *Kathryn L. Gerla, Assistants*, for petitioner Sutherland, et al.

*Peter R. Goldman* and *Toby Thaler* (of *Washington Forest Law Center*), for respondents.

¶1 SCHINDLER, J. — Forests Owned by Washington State (State Owned Forests), Washington Environmental Council and Kettle Range Conservation Group (collectively WEC) challenge the decision of the Washington State Department of Natural Resources (DNR) and the Board of Natural Resources (BNR) to extend the Forest Resource Plan (FRP) for managing the state forest trust land for an additional three years. The trial court ruled DNR's decision was agency action subject to judicial review under chapter 34.05 RCW, Washington's Administrative Procedure Act (WAPA).

¶2 DNR, BNR, Commissioner of Public Lands Doug Sutherland, Lands Steward Bruce Mackey, and intervenors American Forest Resource Council, et al., and Bethel School District No. 403, et al., (collectively DNR)[1] contend DNR's decision is excluded from judicial review under RCW 34.05.010(3)(c) of WAPA as an "other proprietary decision" and the trial court erred in denying the summary judgment motion to dismiss WEC's lawsuit. We granted discretionary review and conclude DNR's decision as the trustee of state owned forest land to extend the FRP is a proprietary decision that is not subject to judicial review under WAPA. We reverse the trial court and dismiss WEC's lawsuit against DNR.

## FACTS

¶3 DNR as the trustee of state forest lands is responsible for managing 2.1 million acres of forest land. Approximately 1.5 million acres of forest land were granted to

---

[1] Unless otherwise necessary, we will refer to these parties as DNR.

Washington at statehood by the federal government in 1889. The federal Enabling Act and article XVI of the Washington State Constitution require the federal grant land to be held in trust for public schools (K-12), state colleges, universities, prisons and others.[2]

¶4 In 1967, Congress amended the Enabling Act to provide that the "proceeds from the sale of timber and other crops . . . shall be available for the acquisition and construction of facilities . . . and for the maintenance and support of such schools and institutions." Pub. L. No. 90-41, 81 Stat. 106 (1967). The federal grant lands are held and managed by the State in trust for the benefit of the public institutions identified in the Enabling Act, and the State has the same fiduciary duties as a private trustee. *County of Skamania v. State*, 102 Wn.2d 127, 132, 685 P.2d 576 (1984).

¶5 The second largest category of state forest land, approximately 600,000 acres, is the "forest board transfer lands." The forest board transfer lands consist of land deeded by counties to the State after tax foreclosures. Under RCW 76.12.030, the forest board transfer lands are "held in trust" and the taxing districts where the lands are located receive the proceeds from the State's management of these lands.

¶6 A small portion of the state forest lands, approximately 3,000 acres, was purchased by the State in 1990 to support community colleges (the Community College Forest Reserve). The Community College Forest Reserve is not held in trust, but the revenues from the land support construction and other improvements for community colleges.

¶7 In 1957, the legislature created DNR and assigned it the responsibility to oversee management of the state forest

---

[2] The federal Enabling Act states: "upon admission of [Washington, Montana, North and South Dakota] into the Union sections numbered sixteen and thirty-six in every township . . . are hereby granted to said States for the support of common schools . . . " Enabling Act § 10, 25 Stat. ch. 180, at 676 (1889). Article XVI of the Washington Constitution sets forth restrictions for the use and disposition of the federal Enabling Act grant lands.

lands.[3] The legislature created BNR as a policy-making body to guide DNR's management of the state forest land. The statute defines the role of BNR to:

> Establish policies to ensure that the acquisition, management, and disposition of all lands and resources within the [DNR's] jurisdiction are based on sound principles designed to achieve the maximum effective development and use of such lands and resources consistent with laws applicable thereto;

RCW 43.30.215(2).

¶8 As trustee for the state forest land, DNR has the duty to produce long-term and short-term income for the trust beneficiaries, preserve the productivity and protect the forest land. *Skamania*, 102 Wn.2d at 136-37; RCW 43-.30.215(2). Revenue for the beneficiaries is generated primarily by selling timber from the state forest land.

¶9 In 1992, the Board adopted a 10-year plan, the Forest Resource Plan (FRP), "to guide [DNR] in managing 2.1 million acres of state forest land."[4] The FRP describes DNR's role as trustee for the beneficiaries and addresses trust asset management, forest land planning, silvicultural (timber growing) and planning implementation. The FRP does not address timber sales or activities for specific tracts of state forest land but requires DNR to conduct planning and analysis before selling timber from state trust land. The FRP establishes statewide management polices and priorities for the 2.1 million acres including policies for harvesting timber. The primary goal of the FRP is "to conserve and enhance the natural resources of state forest land while producing long-term, stable income from these lands,"[5] and the FRP policies seek to preserve the long-term viability of the forest lands while maximizing income for the trust beneficiaries. The FRP also contains policies on reforestation, timber growing, forest health, fire preven-

---

[3] DNR is also for responsible for implementing various regulatory programs. *See* Title 76 RCW.

[4] Clerk's Papers (CP) at 201.

[5] CP at 212.

tion, protection of habitat, wetlands and wildlife, and road building.

¶10 DNR determined that adoption of the FRP in 1992 was a major action significantly affecting the quality of the environment, subject to review under the State Environmental Policy Act, chapter 43.21C RCW (SEPA), and required an Environmental Impact Statement (EIS). On July 31, 1992, BNR approved and adopted the FRP and the EIS. DNR agreed to analyze the cumulative effects of the adopted FRP polices.

¶11 Just before the expiration of the 10-year FRP, BNR proposed extending the FRP for three more years to allow additional time to "complete the Sustainable Harvest Calculation . . . and conduct a formal review of the [FRP] with public input from various public interest groups."[6] DNR determined that the decision to extend the FRP for three more years was a major action significantly affecting the environment subject to SEPA review and on May 24, 2002, issued a Declaration of Significance and a seven-page EIS addendum.[7]

¶12 At its June 4, 2002 meeting, BNR decided to extend the FRP for an additional three years to June 30, 2005. On June 7, 2002, DNR issued a Notice of Action (NOA).[8] The NOA established July 12, 2002 as the SEPA appeal deadline to challenge the decision to extend the FRP for three years.

¶13 On July 11, 2002, WEC filed a complaint for declaratory and injunctive relief against DNR challenging the decision to extend the FRP and adequacy of DNR's SEPA

---

[6] CP at 280.

[7] The EIS addendum incorporated by reference the draft and final EIS prepared for the State's federal habitat conservation plan and the EIS for the State's recent "Forests and Fish Report" forest practice rules.

[8] If there is no established appeal period for agency action, SEPA allows agencies to use a NOA to designate the appeal period and deadline. RCW 43.21C.080.

review.[9] WEC served the lawsuit in accordance with the provisions of WAPA.

¶14 On September 3, 2002, DNR approved 25 separate timber sales on state forest land. On September 20, 2002, WEC filed an amended complaint against DNR, challenging the adequacy of DNR's SEPA review for the timber sales and requesting an injunction against future timber sales on state forest land.

¶15 The trust beneficiaries were allowed to intervene as codefendants in WEC's lawsuit against DNR. The intervenors include 11 counties, 22 school districts and 2 hospital districts.[10]

¶16 DNR and the intervenors filed a motion for summary judgment contending WEC's lawsuit should be dismissed for lack of jurisdiction. DNR argued that its decision to extend the FRP was excluded from judicial review under the proprietary decision exclusion in WAPA, RCW 34-.05.010(3)(c), and DNR was not properly served as required by the general pleading statute, RCW 4.92.020. Alternatively, DNR argued that even if WAPA applied, WEC's lawsuit should be dismissed because it was not filed within the 30-day WAPA statutory appeal period. DNR also requested dismissal of WEC's injunction for timber sales on state forest land.

---

[9] WEC sued DNR, BNR, Doug Sutherland, the Washington State Commissioner of Public Lands, and Bruce Mackey, the Lands Steward.

[10] Bethel School District No. 403, Burlington-Edison School District No. 100, Everett School District No. 2, Evergreen School District No. 114, Issaquah School District No. 411, Kent School District No. 415, Lake Washington School District No. 414, Mount Vernon School District No. 320, Snoqualmie Valley School District No. 414, Tacoma School District No. 10 and Tahoma School District No. 409, Franklin Pierce School District No. 402, Northshore School District No. 417, Puyallup School District No. 3, White River School District No. 416, Castle Rock School District, Mary M. Knight School District, Omak School District, Quillayute Valley School District, Quinault Lake School District, Toutle Lake School District, and Willapa Valley School District, American Forest Resource Council and Clallam County, Clark County, Cowlitz County, Grays Harbor County, Jefferson County, Klickitat County, Mason County, Pacific County, Skagit County, Skamania County, Wahkiakum County, Clallam County Hospital District No. 1, Pacific County Hospital District No. 2, the City of Forks.

¶17 The trial court denied DNR's motion to dismiss WEC's lawsuit for lack of jurisdiction. The trial court ruled DNR's decision was subject to review under WAPA. The trial court concluded DNR's decision to extend the FRP was not exempt as a "proprietary decision in the management of public lands or real property interests" under RCW 34.05.010(3)(c) because the FRP is a "non-project land management planning document rather than a particular sale or other contractual decision."[11] The court also ruled that the NOA established July 12, 2004 as the deadline for appeal and WEC's lawsuit was timely filed on July 11, 2004.[12]

¶18 Under RAP 2.3(b)(4), the trial court certified that its order involved "controlling question of law as to which there is substantial ground for a difference of opinion" and identified the questions as:

(1) Whether the Board of Natural Resources' decision to extend The Forest Resource Plan is exempt from Administrative Procedure Act review as an "other proprietary decision in the management of public lands or real property interests" under RCW 34.05.010(3)(c)? and

(2) If the Administrative Procedure Act applies, whether the Court has subject matter jurisdiction over an action filed and served after the 30-day appeal period specified by RCW 34.05.542(3), if the agency mistakenly, but in good faith, used a Notice of Action under RCW 43.21C.080 which specified a longer appeal period, and the action was commenced before the Notice of Action deadline?[13]

¶19 DNR and the intervenors sought discretionary review of the trial court's decision to deny the motion to dismiss WEC's lawsuit. We granted discretionary review to address whether DNR's decision to extend the FRP was "agency action" subject to judicial review under WAPA.

---

[11] CP at 485.

[12] The trial court granted DNR's motion to dismiss WEC's claim challenging SEPA review of individual timber sales. The dismissal of this claim is not at issue in this appeal.

[13] CP at 486.

## ANALYSIS

¶20 WAPA allows a party to obtain judicial review to challenge "agency action." RCW 34.05.542(3). The legislature broadly defines "agency action" as "[The] licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits." RCW 34.05.010(3); *Muckleshoot Indian Tribe v. Dep't of Ecology*, 112 Wn. App. 712, 722, 50 P.3d 668 (2002), *review denied*, 150 Wn.2d 1016 (2003). The legislature also expressly identifies and excludes certain decisions from the definition of "agency action" and from the purview of judicial review including:

> any sale, lease, contract, *or other proprietary decision in the management of public lands or real property interests,*

RCW 34.05.010(3)(c) (emphasis added).

¶21 Below, the parties agreed that DNR's decision to extend the FRP was a proprietary decision in the management of public lands. The dispute was whether DNR's decision is an "other proprietary decision" that is exempt from judicial review under WAPA.[14] Relying on this court's decision in *Muckleshoot*, WEC argued and the trial court agreed that the exclusion in RCW 34.05.010(3)(c) is limited to proprietary sale, lease or contract decisions, and did not apply to DNR's decision to adopt the FRP, a policy and planning document. DNR contends the trial court erred in reaching this conclusion because under the plain language of the statute, "other proprietary decisions" is not limited to sale, lease, or contract decisions and the *Muckleshoot* court did not address the meaning of "other proprietary decision." We agree.

---

[14] For the first time on appeal WEC claims DNR's decision is not a "proprietary" decision. We do not generally address arguments raised for the first time on appeal. RAP 2.5(a); *Hernandez v. Dep't of Labor & Indus.*, 107 Wn. App. 190, 199, 26 P.3d 977 (2001). Nevertheless, applying the test cited by WEC, we would conclude DNR's decision to extend the FRP as the trustee of state forest land is a proprietary decision. It is a "business-like venture as contrasted with a governmental function." *Hoffer v. State*, 110 Wn.2d 415, 422, 755 P.2d 781 (1988).

¶22 In *Muckleshoot*, the Department of Ecology (Ecology) entered into an "in stream flow agreement" with the city of Seattle to regulate water flow levels in the Cedar River. The question in *Muckleshoot* was whether the agreement was excluded from judicial review under WAPA as a proprietary contract. RCW 34.05.010(3)(c). We decided that the legislature's use of the term "proprietary" in the context of the preceding terms of "sale," "lease," and "contract," was ambiguous. Finding the legislature's purpose in adopting the WAPA was to "provide greater public and legislative access to administrative decision making," this court concluded that "agency action" should be broadly interpreted and any exclusions narrowly construed. *Muckleshoot*, 112 Wn App at 721. We agreed with the parties that "proprietary" modified the preceding terms "sale," "lease" and "contract." Focusing on the nature of the decision, we held that although the Instream Flow Agreement was a contract, Ecology's decision was "governmental or regulatory" and not "proprietary." *Muckleshoot*, 112 Wn. App. at 723.

¶23 WEC claims *Muckleshoot* held that only proprietary contracts are excluded from the definition of agency action under RCW 34.05.010(3)(c) and judicial review. We disagree. In *Muckleshoot*, we held that "proprietary" modifies the preceding terms "sale," "lease" and "contract" in RCW 34.05.010(3)(c). We did not decide and we did not need to decide the meaning of "other proprietary decision" or whether "other proprietary decision" includes only proprietary decisions that are contractual in nature.

■■ ¶24 The meaning of a statute is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The court's objective is to ascertain and carry out the legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. Examining the particular provision of a statute, as well as other statutory provisions in the act is appropriate to decide whether a plain meaning can be

ascertained. *Campbell & Gwinn*, 146 Wn.2d at 10-12. If, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to construction aids, including legislative history. *Campbell & Gwinn*, 146 Wn.2d at 1, 2; *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001). The court must interpret statutes to give effect to all language used, rendering no portion meaningless or superfluous. *City of Seattle v. Dep't of Labor & Indus.*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998).

¶25 The legislature's inclusion of the language "other proprietary decision" requires us to give meaning to that phrase. We conclude that the exclusion in RCW 34.05.010(3)(c) is not limited only to a proprietary sale, lease, or contract. We reject the construction advocated by WEC and adopted by the trial court because it renders the phrase "other proprietary decision" superfluous, ignores the language "or . . . other proprietary decision" and contradicts the express language of the statute. *See In re Pers. Restraint King*, 146 Wn.2d 658, 663, 49 P.3d 854 (2002) (rejecting interpretation of a statute which renders statutory language superfluous). The unambiguous language of the phrase "or . . . other proprietary decision" indicates the legislature intended to exclude all proprietary land management decisions, and not just sale, lease, and contract decisions, from the definition of "agency action." While we decided in *Muckleshoot* that the words "or other" meant that "proprietary" modified "sale, lease, contract," we conclude that "or other" also modifies "proprietary decision in the management of public lands or real property interests" because "other proprietary decision" must have an independent and separate meaning.

¶26 WEC argues this court should apply the canon of statutory construction ejusdem generis. But it is necessary to look only to the canons of statutory construction if

the statute is ambiguous.[15] *Campbell & Gwinn*, 146 Wn.2d at 9-10. As explained, the statutory language "other proprietary decision" in RCW 34.05.010(3)(c) is not ambiguous. Our conclusion is consistent with our decision in *Muckleshoot*. In *Muckleshoot*, we stated the statute was ambiguous in two respects that are not applicable here. In ascertaining whether Ecology's agreement was a proprietary contract and whether "proprietary" modified "sale, lease, contract," in RCW 34.05.010(3)(c), the *Muckleshoot* court found the exclusionary clause was ambiguous because it was not clear whether "proprietary" modified the preceding terms "sale, lease and contract" and because "proprietary" has more than one meaning. Here, the parties agreed that DNR's decision to extend the FRP was a proprietary decision and there is no dispute that DNR's decision is not a sale, lease, or contract.

¶27 Even if we decided the statute was ambiguous and used the statutory construction canon of ejusdem generis, we would not conclude that "other proprietary decision" applies only to a proprietary decision that is similar in nature to a sale, lease or contract. Under the rule of ejusdem generis, " 'where general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated.' " *Muckleshoot*, 112 Wn. App. at 725 (quoting BLACK'S LAW DICTIONARY 517 (6th ed. 1990)). The rule of ejusdem generis limits the scope of a general term to the class of the specific terms preceding it. As explained, "other proprietary decision" cannot refer only to sale, lease or contract decisions. To construe the phrase that way renders this language superfluous, ignores "or . . . other proprietary decision" and is contrary to the plain meaning of the statute. *See State v. Sigman*, 118 Wn. 2d 442, 447-48, 826 P.2d 144 (1992) (in interpreting statutory language "to knowingly rent, lease, or make available,"

---

[15] It is also necessary to look to legislative history only if a statute is ambiguous. *Campbell & Gwinn*, 146 Wn.2d at 9-10.

the court erred in concluding that "make available" contemplated only an act similar to renting or leasing).[16]

¶28 WEC also asserts that construing RCW 34-.05.010(3)(c) to exclude proprietary decisions other than sale, lease, or contract is inconsistent with the intent of WAPA because it limits judicial review of agency decision-making. But if DNR's decision is exempt from judicial review under WAPA, the parties agree that review of the DNR's decision to extend the FRP is available through other means including a constitutional writ. Under a constitutional writ, a court will review a decision that is illegal, or arbitrary and capricious. *Saldin Sec. v. Snohomish County*, 134 Wn.2d 288, 292-93, 949 P.2d 370 (1998). Because the legislature explicitly provided that certain agency decisions, including proprietary decisions, would be exempt from judicial review under WAPA, we cannot conclude our decision is inconsistent with the legislature's intent.

¶29 In sum, we conclude the phrase "other proprietary decisions" in RCW 34.05.010(3)(c) is not limited to contracts. Acting as the trustee of state forest land, DNR's decision to extend the FRP for three years is an "other proprietary decision" and is exempt from the provisions of the WAPA. The policies in the FRP concern DNR's responsibility for managing state forest lands and generating income for the beneficiaries of the land held in trust, including priorities for harvesting timber, investment policies, and policies related to sustaining the forest resource. Because we conclude DNR's decision is exempt from judicial review under the provisions of WAPA, the lawsuit was

---

[16] Both parties also argue that legislative history supports their interpretations of the statute. We conclude the legislative history cited by the DNR and WEC does not explain what the legislature intended by the phrase "other proprietary decisions."

not properly served and the trial court lacked jurisdiction. We reverse and dismiss WEC's lawsuit against DNR.[17]

COLEMAN and AGID, JJ., concur.

Review denied at 154 Wn.2d 1022 (2005).

---

[17] Because we reach this conclusion, we do not address DNR's argument that WEC's lawsuit did not comply with the requirements of WAPA and was untimely.