[No. 72877-1.   En Banc.]
Argued June 24, 2003.     Decided December 11, 2003.

WASHINGTON EDUCATION ASSOCIATION, *Respondent*, v. THE PUBLIC DISCLOSURE COMMISSION, ET AL., *Appellants*.

*Christine O. Gregoire, Attorney General*, and *Nancy J. Krier, Assistant*, for appellants.

*Harriet K. Strasberg*; *Aimee S. Iverson* (of *Washington Education Association*); and *Michael J. Gawley* (of *Law Offices of Michael Gawley*), for respondent.

*Aaron H. Caplan* on behalf of American Civil Liberties Union of Washington, amicus curiae.

*Thomas A. Carr, City Attorney*, and *Gary E. Keese, Assistant*, on behalf of City of Seattle, amicus curiae.

*Clifford D. Foster, Jr.*, and *Sarah M. Wright* on behalf of Puyallup School District, amicus curiae.

MADSEN, J. — The Washington State Public Disclosure Commission (PDC) is an administrative agency authorized to implement and enforce the laws on campaign finance and disclosure codified in chapter 42.17 RCW. RCW 42.17.350, .360. In August 2001, the PDC issued guidelines interpreting the meaning and application of laws and rules governing the use of public facilities in campaigns. The Washington Education Association (WEA) challenged the guidelines in a combined Administrative Procedure Act challenge to agency action under chapter 34.05 RCW and a civil rights challenge under 42 U.S.C. § 1983 and ultimately obtained a trial court order declaring that the guidelines, as written, were unconstitutional and constituted an arbitrary and capricious agency action.

In a direct appeal to this court, the PDC contends, among other things, that because the guidelines are the agency's opinion only and cannot be violated or enforced, the WEA is seeking an advisory opinion on an abstract dispute over whether the PDC's opinion violates constitutional rights

and/or the State's administrative law. We hold that the guidelines have no legal or regulatory effect and implicate no one's legal interests and dismiss the WEA's claims for failure to present a justiciable controversy. Accordingly, we reverse the trial court.

## FACTS

In 1972, through Initiative 276, the people of Washington enacted RCW 42.17.130, which prohibits the use of public facilities to support or oppose campaigns. RCW 42.17.130 currently directs:

> No elective official nor any employee of his office nor any person appointed to or employed by any public office or agency may use or authorize the use of any of the facilities of a public office or agency, directly or indirectly, for the purpose of assisting a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition.

The statute also provides a nonexclusive list of "facilities of a public office or agency":

> Facilities of public office or agency include, but are not limited to, use of stationery, postage, machines, and equipment, use of employees of the office or agency during working hours, vehicles, office space, publications of the office or agency, and clientele lists of persons served by the office or agency . . . .

*Id.* The statute concludes with a proviso indicating certain circumstances in which the statute does not apply. *Id.*

In order to implement and enforce chapter 42.17 RCW, Initiative 276 created the PDC. *See* RCW 42.17.350, .360. The PDC is composed of five citizen members. RCW 42.17.350. Since its establishment, the PDC has implemented and enforced RCW 42.17.130 by adopting rules pursuant to the formal rule-making procedures under RCW 34.05.310-.395 and by issuing declaratory orders which "finally determine the legal rights, duties, privileges, immunities, or other legal interests of a specific person or persons." RCW 34.05.010(11)(a); *see also* RCW 34.05.240

(petition for declaratory order by agency). Furthermore, the PDC has acted in an advisory capacity by preparing written educational materials which interpret the law and its requirements.

In 1993, the PDC issued an interpretive statement on RCW 42.17.130's application to school districts and their employees. In 2001, school districts requested that the PDC update and clarify the 1993 guidelines, and the PDC responded by obtaining input from school and union representatives, including respondent WEA. At the PDC's July 2001 meeting, the PDC presented a draft for public comment and thereafter unanimously updated the guidelines as Interpretive Statement No. 01-03, entitled *Guidelines for School Districts in Election Campaigns* (the guidelines). The guidelines were made available on the PDC's website for the public's view.

Respondent WEA is a voluntary statewide labor organization that serves as the exclusive bargaining representative for over 70,000 persons employed in Washington public schools and institutions for higher education. WEA produces and distributes union newsletters and publications to its members at their workplaces. The WEA's publications provide information on levies and ballot measures, including the WEA's position on these matters.

After the PDC issued the 2001 guidelines, the WEA challenged the following three statements listed in the guidelines' chart:

> [Employees] may, during non-work hours, make available campaign materials to employees in lunchrooms and break rooms, which are used only by staff or other authorized individuals.

> [Union representatives] shall not distribute promotional materials in classrooms or other public areas.

> [Union representatives] shall not use the school's internal mail or email system to communicate campaign-related information, including endorsements.

Clerk's Papers (CP) at 405-06. The WEA's complaint alleged a violation of civil rights under 42 U.S.C. § 1983 and

petitioned for judicial review of agency action pursuant to RCW 34.05.510. 42 U.S.C. § 1983 provides for a cause of action against a person acting under the color of state law who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The Administrative Procedure Act (APA) provides for judicial review of agency action to determine if the action is "[u]nconstitutional; [o]utside the statutory authority of the agency or the authority conferred by a provision of the law; [a]rbitrary or capricious; or [t]aken by persons who were not properly constituted as agency officials lawfully entitled to take such action." RCW 34.05.570(4)(c)(i)-(iv). Both statutes provide relief to a party aggrieved or adversely affected by unlawful action by the state, its actors, or both. 42 U.S.C. § 1983; RCW 34.05.574.

Specifically, the WEA's complaint alleged that the PDC's "adoption, publication, and dissemination" of the three statements in the guidelines violated its federal and state constitutional free speech and associational rights and its Fourteenth Amendment due process rights. CP at 11. The WEA also contended that the PDC's publication and dissemination of the statements was an arbitrary and capricious state action in violation of the APA, RCW 34.05.570. CP at 9-10.

The trial court granted the WEA partial summary judgment. The court concluded that the PDC's individual commissioners' actions in "adopting, promulgating and disseminating the challenged provisions of the [guidelines]" violated WEA's free speech and associational rights, as well as due process. CP at 621. Accordingly, the court found a violation of 42 U.S.C. § 1983. CP at 618-21. The court also concluded that the challenged guidelines violated the APA as arbitrary and capricious state action. CP at 623. Pursuant to 42 U.S.C. § 1983 and RCW 34.05.574, the court enjoined the PDC from continuing to publish and distribute the guidelines with the challenged provisions and enjoined

the agency from initiating or maintaining any investigation or enforcement action based upon an alleged violation of the challenged provisions. CP at 621-23. Attorney's fees were granted to the WEA, and PDC's request for a stay pending appeal was denied. CP at 629-33, 612-13.

Following the trial court's order, the PDC removed the guidelines in their entirety from the PDC website and replaced them with a copy of the permanent injunction and order.

We granted PDC's request for direct review of the trial court's decision.

## ANALYSIS

The WEA challenges the aforementioned statements in the guidelines as unlawful agency action. It claims that the statements are "unconstitutional, on their face, and/or as applied" to it and its members and that the "adoption, publication, and dissemination" of the statements is arbitrary and capricious agency action. CP at 10-11.

"Agency action" is defined by the legislature as "licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits." RCW 34.05.010(3). The PDC contends that its guidelines do not constitute an agency action. Rather, the PDC argues that it issued the guidelines as an "interpretive statement," which is "a written expression of the opinion of an agency, entitled an interpretive statement by the agency head or its designee, as to the meaning of a statute or other provision of law, of a court decision, or of an agency order." RCW 34.05.010(8).

The legislature encourages administrative agencies to issue interpretative statements advising the public of "its current opinions, approaches, and likely courses of action" because it recognizes "that a cooperative partnership between agencies and regulated parties that emphasizes education and assistance *before* the imposition of penalties

will achieve greater compliance with laws and rules." RCW 34.05.230(1); RCW 43.05.005 (emphasis added). However, an agency's written expression of its interpretation of the law does not implement or enforce the law and is "advisory only." RCW 34.05.230(1).

Furthermore, the issuance of interpretative statements is not governed by formal adoption procedures. There is no need for formal procedures because such advisory statements have no legal or regulatory effect. A person cannot violate an interpretive statement, and conduct contrary to the agency's written opinion does not subject a person to penalty or administrative sanctions. The PDC's advisory statements serve only to aid and explain the agency's interpretation of the law.

In contrast, rules or declaratory orders adopted by an agency are enforceable, and a violation "subjects a person to a penalty or administrative sanction." RCW 34.05.010(16)(a). To adopt a rule, an agency must adhere to formal rule-making procedures, which include notice, public hearing and comment, agency adoption, public filing, and opportunity for petitions for adoption, amendment, and repeal. RCW 34.05.310-.395. The PDC has adopted two rules implementing RCW 42.17.130: WAC 390-05-271 on the general application of the statute and WAC 390-05-273 defining normal and regular conduct.[1]

---

[1] In full, WAC 390-05-271 provides:

(1) RCW 42.17.130 does not restrict the right of any individual to express his or her own personal views concerning, supporting, or opposing any candidate or ballot proposition, if such expression does not involve a use of the facilities of a public office or agency.

(2) RCW 42.17.130 does not prevent a public office or agency from (a) making facilities available on a nondiscriminatory, equal access basis for political uses or (b) making an objective and fair presentation of facts relevant to a ballot proposition, if such action is part of the normal and regular conduct of the office or agency.

WAC 390-05-273 follows:

Normal and regular conduct of a public office or agency, as that term is used in the proviso to RCW 42.17.130, means conduct which is (1) lawful, i.e., specifically authorized, either expressly or by necessary implication, in an appropriate enactment, and (2) usual, i.e., not effected or authorized in or by some extraordinary means or manner. No local office or agency may authorize a use

Similarly, an agency must undergo a formal process to issue a declaratory order. WAC 390-12-250. "Any person may petition an agency for a declaratory order with respect to the applicability to specified circumstances of a rule, order, or statute enforceable by the agency." RCW 34.05.240(1). The petition will be presented to the agency with notice to the petitioner, and the petitioner will have the opportunity to present additional material and argument anytime before the issuance of the order. WAC 390-12-250(3)-(4). The agency may issue a binding or nonbinding order or decline to issue an order. WAC 390-12-250(5). If the agency issues an order, the petitioner has the opportunity to comment, and the order is prospective in effect. WAC 390-12-250(7)-(8).

In this case, the PDC issued Interpretive Statement No. 01-03, expressing its interpretation of the laws and rules concerning the use of public facilities in campaigns. The document opens with the text of the laws and rules concerning the use of public facilities in political campaigns, including RCW 42.17.130, RCW 28A.320.090, WAC 390-05--271, and WAC 390-05-273. CP at 16-17. The document then sets forth "basic principles" explaining the PDC's interpretation of the laws' application to school districts. *Id.* at 17. It concludes with a paragraph advising readers how to use the guidelines:

> This document is intended to assist school districts, employees, directors, and others in complying with the requirements of the Washington State statutes, regulations, and case law governing school districts and election campaigns. As noted in the principles, hard and fast rules are difficult to establish for every fact pattern that may appear in the course of election campaigns . . . . Situations may arise which are not squarely addressed by the guidelines or which merit additional discussion. The PDC urges districts to review the guidelines in their entirety, and to consult with their own legal counsel and with

of public facilities for the purpose of assisting a candidate's campaign or promoting or opposing a ballot proposition, in the absence of a constitutional, charter, or statutory provision separately authorizing such use.

the PDC. The PDC can be reached at 1-877-601-2828.

CP at 19.

A chart follows, indicating actions the PDC believes are "permitted" and "not permitted" for designated persons (i.e., principals or building administrators, teachers or other employees, and union representatives). CP at 20-34. The chart includes a column of "general considerations" to aid in determining whether an action would be permitted or not permitted for a certain category of persons. *Id.* The document concludes with two notes, which seem to strongly suggest that the guidelines must be read in conjunction with the laws and rules concerning the use of public facilities in campaigns:

> **Note on Timing of Activities**: A particular activity may be subject to the scrutiny of the [PDC] depending in part on whether it is a part of the "normal and ordinary" conduct of a district or a school. Generally, activities that occur after a school board has passed a resolution authorizing a measure to be placed on the ballot will be subject to greater scrutiny by the [PDC] than those occurring before such a resolution has been passed.
>
> **Note on District Policies**: The application of these guidelines is also subject to each district's own policies as adopted by the school board.

CP at 34.

In sum, the guidelines document is an interpretive statement and not a formally adopted rule or order. The document is meant only to aid and assist in compliance with the law and does not purport to have the effect of law or regulation. The WEA, nonetheless, argues that although the PDC characterizes the guidelines as "advisory," their issuance has the effect of regulating the WEA's conduct. The WEA compares this case to *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S. Ct. 631, 9 L. Ed. 2d 584 (1963), where the United States Supreme Court found an administrative agency's advice amounted to a regulation in the form of censorship.

In *Bantam*, a state commission on youth morality issued notices to distributors advising of publications that were

objectionable for youth. *Id.* at 68-69. The Supreme Court found that the notices were "phrased virtually as orders" and were not purely advisory. *Id.* at 68. The notices thanked distributors for their "cooperation" in advance, reminding of the commission's duty to recommend to the Attorney General prosecution of purveyors of obscenity, and the notices were "invariably followed up by police visitations" to the distributors' businesses to check on compliance. *Id.* at 62, 68. The Supreme Court held that the commission's practice "went far beyond advising" of legal rights and liabilities, and that it "acted as an agency not to advise but to suppress." *Id.* at 72. The Court held that this system of informal censorship violated the First and Fourteenth Amendments. *Id.* at 70-72.

Unlike *Bantam*, the case before us is not an instance of regulation in the guise of advice. The evidence before the court establishes that the PDC issued the guidelines as an aid to the public, interpreting the laws and rules concerning the use of public facilities in campaigns. The guidelines are advisory and do not purport to be anything more. Moreover, there is no evidence indicating that the PDC acted to enforce the guidelines or regulate the WEA in any manner.

The WEA challenges the PDC's opinion only; thus, there is no "agency action" for the court to review pursuant to the WEA's petition for judicial review. RCW 34.05.510. Likewise, there is no action by the individual commissioners that deprived the WEA of any "rights, privileges, or immunities secured by the Constitution and laws," in violation of a 42 U.S.C. § 1983 claim.

We steadfastly adhere to " 'the virtually universal rule' " that there must be a justiciable controversy before the jurisdiction of a court may be invoked. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 814-15, 514 P.2d 137 (1973)), *cert. denied*, 535 U.S. 931 (2002). For a justiciable controversy to exist there must be:

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypo-

thetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*To-Ro Trade Shows,* 144 Wn.2d at 411 (quoting *Diversified,* 82 Wn.2d at 815); *see also Wash. Beauty Coll., Inc. v. Huse,* 195 Wash. 160, 164-65, 80 P.2d 403 (1938). All four of the justiciability factors "must coalesce" to ensure that the court does not "step[ ] into the prohibited area of advisory opinions." *Diversified,* 82 Wn.2d at 815.

In this case, whether the guidelines are a correct or incorrect interpretation of the law presents nothing more than an academic or hypothetical question. The guidelines have no legal or regulatory effect, and the PDC's issuance of the guidelines does not implicate actual or direct legal interests of the WEA. The WEA has not alleged an actual, present, existing dispute, or the seeds of a mature one and its claims are not justiciable. The trial court erred in reviewing the claims.

## CONCLUSION

The WEA's claims in this case fail to present a justiciable controversy and therefore, must be dismissed. Accordingly, we reverse the trial court's orders, including the permanent injunction and 42 U.S.C. § 1988 grant of attorney fees.

ALEXANDER, C.J., and JOHNSON, BRIDGE, and FAIRHURST, JJ., concur.

SANDERS, J. (dissenting) — Through a crabbed analysis of justiciability the majority stifles the Washington Education Association's (WEA's) attempt to protect the constitutional rights of its members by improperly denying the WEA its day in court. As the Public Disclosure Commission's (PDC's) guidelines directly chill the WEA's alleged First Amendment protected activities, I conclude this case presents a

justiciable controversy demanding our review on the merits.

The majority asserts "[t]he WEA has not alleged an actual, present, existing dispute, or the seeds of a mature one and its claims are not justiciable." Majority at 623. The majority claims the PDC's guidelines "have no legal or regulatory effect, and the PDC's issuance of the guidelines does not implicate actual or direct legal interests of the WEA." Majority at 623. However this ignores the fact that the guidelines have had a substantial regulatory effect by altering the actions of the WEA and its members. It also ignores case law holding that a controversy is justiciable where state action directly chills free speech, even in the absence of enforcement.

It has long been recognized that " '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.' " *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S. Ct. 658, 67 L. Ed. 1117 (1923)). This is particularly true in First Amendment cases where the danger of chilling free speech through the threat of prosecution is substantial. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93, 108 S. Ct. 636, 98 L. Ed. 2d 782 (1988). The existence of a policy limiting one's right to communicate may support a First Amendment cause of action even though the policy has not yet been enforced. *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 777 F.2d 1046, 1053-55 (5th Cir. 1985), *aff'd*, 479 U.S. 801 (1986); *Spartacus Youth League v. Bd. of Trs. of Ill. Indus. Univ.*, 502 F. Supp. 789, 796-97 (N.D. Ill. 1980) ("Injury to First Amendment rights may result from the threat of enforcement itself, since it may chill the plaintiff's ardor and eliminate his desire to engage in protected expression."); *accord Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (observing that to "avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your

tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences.").

This court has also recognized the threat posed by state action that chills free speech. *See State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.*, 135 Wn.2d 618, 622 n.3, 957 P.2d 691 (1998); *Walker v. Munro*, 124 Wn.2d 402, 416, 879 P.2d 920 (1994). And we have previously acknowledged "[a] statute that chills a plaintiff's speech grants standing to that plaintiff and presents a case ripe for adjudication. A plaintiff need not 'expose himself to actual arrest or prosecution' to challenge a statute which deters the exercise of his constitutional rights." *119 Vote No! Comm.*, 135 Wn.2d at 622 n.3 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974)). Even if a state commission has no prosecutorial powers, a challenge to the commission's advisory opinions is justiciable if the "direct and obviously intended result of the Commission's activities" is to chill a party's First Amendment protected activities. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6, 83 S. Ct. 631, 9 L. Ed. 2d 584 (1963).

The majority's attempt to distinguish *Bantam* is unpersuasive. The majority contends *Bantam* is distinguishable because, unlike the state commission's notices in that case, the PDC's guidelines do not constitute "regulation in the guise of advice," but are merely "advisory and do not purport to be anything more." Majority at 622. This ignores the significance of the fact that the PDC's guidelines are an interpretation of a statute issued by the agency whose task it is to interpret *and enforce* that statute. As the Supreme Court recognized in *Bantam* "[p]eople do not lightly disregard" the threat of prosecution. 372 U.S. at 68. That threat has altered the activities of the WEA and consequently given the PDC's guidelines a regulatory effect.

Prior to the issuance of the PDC's guidelines WEA representatives delivered union newsletters and publications to members at schools during nonwork hours. Follow-

ing issuance of the guidelines the WEA advised its representatives not to distribute union materials except in faculty rooms or at union meetings. To avoid potential prosecution the WEA and its members have decided to "err on the side of caution" and strictly adhere to the guidelines. Clerk's Papers at 76, 90. This chilling fear of enforcement has deterred the WEA and its members from exercising their alleged First Amendment protected activities. Accordingly, the WEA has presented a justiciable controversy demanding our review on the merits and I would give it to them.

Therefore I dissent.

IRELAND, CHAMBERS, and OWENS, JJ., concur with SANDERS, J.