[No. 39328-0-II.   Division Two.   July 20, 2010.]

TEAMSTERS LOCAL UNION NO. 117 ET AL., *Appellants*, v. THE HUMAN RIGHTS COMMISSION, *Respondent*.

*Spencer N. Thal* and *Anna A. Jancewicz*, for appellants.

*Robert M. McKenna, Attorney General,* and *Heather L. Polz, Assistant,* for respondent.

¶1 HUNT, J. — Teamsters Local Union No. 117 and Department of Corrections (Department) employees John Torres and Ron Nelson (collectively Teamsters) appeal dismissal of their challenge to a Human Rights Commission opinion letter to the Department concerning bona fide gender-based occupational qualifications at a women's correctional facility. The superior court ruled that the opinion

letter was not an "agency action" giving rise to a justiciable cause of action for judicial review. We affirm.

## FACTS

¶2 Under Washington Administrative Code (WAC) 162--16-210,[1] the Department requested an opinion letter from the Human Rights Commission about whether it could depart from the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. WLAD prohibits job discrimination on the basis of gender and other categories, and the Department asked whether it could carve out an exception for the female gender as a "bona fide occupational qualification" (BFOQ)[2] for certain correctional employee positions at a specific correctional facility that houses female inmates.[3] Clerk's Papers (CP) at 10. Responding by letter, the

---

[1] WAC 162-16-210 provides:

(1) When requested to do so, the commission's staff will advise persons on how to meet particular employment needs consistently with the law against discrimination.

(2) Persons may petition the commission for an executive director's opinion determining whether protected status would be a bona fide occupational qualification in particular circumstances, unless the commission or another public agency with comparable jurisdiction has directed or authorized the action.

[2] WAC 162-16-240 provides:

Under the law against discrimination, there is an exception to the rule that an employer, employment agency, labor union, or other person may not discriminate on the basis of protected status; that is if a bona fide occupational qualification (BFOQ) applies . . . . The following examples illustrate how the commission applies BFOQs:

(1) Where it is necessary for the purpose of . . . maintaining conventional standards of sexual privacy (e.g., locker room attendant, intimate apparel fitter) the commission will consider protected status to be a BFOQ.

[3] The Department requested that 18 additional position posts, 9 of which were "Relief positions," Clerk's Papers (CP) at 11, be designated as female-only in an effort to maintain conventional standards of sexual privacy. WAC 162-16-240(1). "The Department maintains that it is essential that each of these posts be staffed by a female officer to ensure privacy rights of the [female] offenders." CP at 11. The Department described some of the privacy-based duties that these position posts perform, including "pat and strip searches of female offenders entering and leaving the facility," "hourly checks (or more often) within all areas within their zone of responsibility," "room checks" and monitoring "through observation win-

Commission issued an "opinion"[4] that sex may constitute a BFOQ for various employment positions at the facility. CP at 13. Challenging this opinion, the Teamsters filed a petition for judicial review[5] (1) to stay and to reverse what they characterized as the Commission's "agency action," or alternatively, (2) to require the Commission "to conduct an adjudicative proceeding prior to issuing [its opinion letter]." CP at 9.

¶3 The Commission moved to dismiss the Teamsters' petition. In granting the motion, the superior court ruled that (1) *Washington Education Ass'n v. Public Disclosure Commission*, 150 Wn.2d 612, 623-24, 80 P.3d 608 (2003) (*WEA*) was dispositive; and (2) therefore, the opinion letter

(1) constituted an "interpretive statement" under the Administrative Procedure Act,[6] rather than "agency action," and,

(2) therefore, "does not give rise to any rights on the part of [the Teamsters] at this time for judicial review."

Verbatim Report of Proceedings (VRP) at 3-4. The superior court further noted that, even if the opinion letter were an "agency action," the Teamsters' petition would not survive a motion to dismiss because the Teamsters failed to show "injury in fact" and "causation between what the [Commission] is doing and any action that the Department of Corrections may or may not be taking with respect to [the Teamsters]."[7] VRP at 4-5. Citing *WEA*, the superior court concluded that the Commission's opinion letter was "hypothetical or academic[,] not hav[ing] any immediate effect on its own" and dismissed the Teamsters' petition. VRP at 5.

---

dows" during which they "may encounter female offenders in varying states of undress while showering, toileting, and dressing." CP at 12.

[4] This opinion letter opened with the following statement: "Under the authority of Chapter 162-04-070 of the [WAC], the following constitutes an opinion of the Washington State Human Rights Commission (WSHRC) Executive Director in response to a request." CP at 10.

[5] The Teamsters filed their petition under RCW 34.05.514(1).

[6] Ch. 34.05 RCW.

[7] The superior court elaborated, "If there is injury it is going to be because of what the Department of Corrections does, not what the [Commission] does." VRP at 5.

¶4 The Teamsters appeal.

## ANALYSIS

¶5 The Teamsters argue that the superior court erred in dismissing its petition for judicial review because the Commission's opinion letter constituted a justiciable agency action, not a mere interpretive statement. Br. of Appellant at 8. We disagree.

■■ ¶6 As the superior court noted, *WEA* is dispositive. In *WEA*, the Washington State Public Disclosure Commission "issued guidelines interpreting the meaning and application of laws and rules governing the use of public facilities in campaigns." *WEA*, 150 Wn.2d at 614. Following WEA's challenge to the guidelines, our Supreme Court reversed the superior court's order declaring the guidelines unconstitutional and arbitrary and capricious agency action, holding "that the guidelines ha[d] no legal or regulatory effect and implicate no one's legal interests." *WEA*, 150 Wn.2d at 615. The Supreme Court further elaborated:

> [W]hether the guidelines are a correct or incorrect interpretation of the law presents nothing more than an academic or hypothetical question. The guidelines have no legal or regulatory effect, and the [Public Disclosure Commission's] issuance of the guidelines does not implicate actual or direct legal interests of the WEA. The WEA has not alleged an actual, present, existing dispute, or the seeds of a mature one and its claims are not justiciable. The trial court erred in reviewing the claims.

*WEA*, 150 Wn.2d at 623.

¶7 As the *WEA* court further explained, for a justiciable controversy to exist there must be:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than

potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*WEA*, 150 Wn.2d at 622-23 (alteration in original) (internal quotation marks omitted) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)).

■ ■ ¶8 The Teamsters have not met this justiciable controversy test in its challenge to the Commission's opinion letter because (1) the opinion letter addresses only academic or hypothetical application of the law and, therefore, does not meet the third requirement for a justiciable controversy; and (2) under the applicable Administrative Procedure Act (APA) provisions, it is clear that the Commission's opinion letter is an advisory interpretative statement,[8] which, as our Supreme Court held in *WEA*, does not give rise to a justiciable controversy when challenged.[9] *WEA*, 150 Wn.2d at 623. For example, RCW 34.05.230(1) provides:

> An agency is encouraged to advise the public of its current *opinions*, approaches, and likely courses of action by means of interpretive or policy statements. Current interpretive and policy statements are advisory only.

(Emphasis added.) And RCW 34.05.010(8) provides:

> "Interpretive statement" means a written expression of the *opinion of an agency*, entitled an interpretive statement by the agency head or its designee, as to the meaning of a statute or other provision of law, of a court decision, or of an agency order.

(Emphasis added.)

¶9 Because the Commission's opinion letter is an interpretive statement under the APA, we hold that it explicitly "constitut[es] an opinion of the [Commission]," CP at 10,

---

[8] As the Commission's counsel noted at oral argument, an employer is not required to seek such an advisory opinion or to follow it once issued.

[9] We note, however, as the Teamsters' counsel mentioned at oral argument, that individual employees who believe the Department has discriminated against them in the workplace may seek redress through either an Equal Employment Opportunity Commission claim or litigation under the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e, and the WLAD under chapter 49.60 RCW.

50

and, therefore, cannot serve as the basis for a justiciable action. Accordingly, we affirm the superior court's dismissal of the Teamsters' petition.[10]

Penoyar, C.J., and Van Deren, J., concur.

---

[10] Because the Teamsters fail to present a justiciable controversy, the threshold issue, we do not reach their other arguments. Neither party requests attorney fees.