IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| SUMAS MOUNTAIN COMMUNITY FOR LANDSLIDE AWARENESS and PAUL KENNARD, | ) ) ) ) | No. 76447-1-I |
| Appellants, | ) ) | ORDER WITHDRAWING AND SUBSTITUTING OPINION |
| v. | ) ) | |
| WASHINGTON STATE FOREST PRACTICES BOARD, | ) ) ) | |
| and | ) ) ) | |
| WASHINGTON STATE FOREST PROTECTION ASSOCIATION, | ) ) ) | |
| Respondent-Intervenor. | ) ) | |

On October 29, 2018, the Washington Court of Appeals, Division One,

filed an Unpublished Opinion in the above-captioned case. The panel has

determined that the opinion filed on October 29, 2018 should be withdrawn and a

substitute opinion filed. Now, therefore, it is hereby

ORDERED that the opinion filed on October 29, 2018 shall be withdrawn

and a substitute unpublished opinion shall be filed.

DATED this _5th_ day of _November_, 2018.

_Andrus, J._

_Becker, J_

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| SUMAS MOUNTAIN COMMUNITY FOR LANDSLIDE AWARENESS and PAUL KENNARD, | ) ) ) ) | No. 76447-1-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| WASHINGTON STATE FOREST PRACTICES BOARD, | ) ) ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| and | ) ) | |
| WASHINGTON STATE FOREST PROTECTION ASSOCIATION, | ) ) ) | |
| Respondent-Intervenor. | ) | FILED: November 5, 2018 |

ANDRUS, J. — A plaintiff may seek judicial review of "agency action," including actions that implement or enforce a statute. RCW 34.05.010(3); RCW 34.05.570(4). But an agency's advisory documents are not subject to judicial review under Washington's Administrative Procedure Act (APA). Wash. Educ. Ass'n v. Wash. State Pub. Disclosure Comm'n, 150 Wn.2d 612, 619, 80 P.3d 608 (2003) (WEA). Where an agency issues guidance documents that do not

have the force of law, and there is no evidence of enforcement, issuing the guidance does not amount to agency action. Id. at 621.

Following the Oso landslide in 2014, the Forest Practices Board (the Board) adopted revisions to Section 16 of its Board Manual, which provides "Guidelines for Evaluating Potentially Unstable Slopes and Landforms." The Sumas Mountain Community for Landslide Awareness and Paul Kennard petitioned for judicial review of the revised manual, arguing that it fails to adequately implement the Board's rules concerning unstable slopes. The trial court dismissed the action, ruling that the revision of the manual was not an "agency action" subject to judicial review under RCW 34.05.010(3) and 34.05.570(4). Because the Board Manual is a guidance document that does not purport to have the force of law and is not independently enforceable, we affirm.

## FACTS

This case concerns the regulation of forestry practices. Forestry activity is governed by the Forest Practices Act of 1974, chapter 76.09 RCW. The Board promulgates rules to implement this act. RCW 76.09.040; WAC 222-12-010. The Department of Natural Resources (DNR) administers the rules by issuing permits and assessing penalties. RCW 76.09.020(10); RCW 76.09.040(1)(c). At the Board's direction, DNR also prepares a manual as "an advisory technical supplement to the forest practices rules." WAC 222-12-090.

Following the Oso landslide, the Board reexamined its rules and guidance concerning unstable slopes. The forest practices rules provide that, when a party

applies for a permit to log or conduct other forestry activity on a potentially unstable slope, the application must be reviewed under the State Environmental Policy Act (SEPA). WAC 222-16-050(1). The rule defines "potentially unstable slopes or landforms" to include four specific landforms and a fifth catch-all category. WAC 222-16-050(1)(d)(i). The rule includes a parenthetical referring to Section 16 of the Board Manual for more descriptive definitions. WAC 222-16-050(1)(d)(i).

Section 16 provides photos, diagrams, and academic descriptions of areas that are "potentially unstable slopes or landforms." Because numerous factors must be considered in determining whether a site is a potentially unstable slope, the manual states that the "appropriate investigation process cannot be defined by the rigid application of a set of procedural rules." Rather, the Board Manual provides "a general overview of the typical sequence and elements of a slope-stability assessment." Necessary analyses are to be identified on a site-by-site basis.

At the Board's direction, DNR convened a panel of experts and held a series of meetings to review Section 16. During this process, a point of contention was whether the manual adequately identified and described potentially unstable slopes. In November 2015, DNR released a draft of the revised Section 16. Members of the Sumas Mountain Community for Landslide Awareness, Kennard, and two other geologists objected to the revisions. They argued that the revisions were inadequate because they used permissive, rather

than directive, language; did not require the use of a particular landslide screening tool; and failed to adequately address deep-seated landslides. The Board adopted the revised section on a temporary basis, directing staff to further review the identified concerns. The Board also initiated review through the adaptive management program to determine whether the identified concerns should be addressed through the rule-making process.[1] DNR released its final amendments in April 2016, and the Board adopted them in May.

In June 2016, the Sumas Mountain Community for Landslide Awareness and Kennard (collectively Sumas Mountain) brought an action in superior court seeking review of the revised manual. The petition alleged that, because the revised manual did not include the proposed screening tool, directive language, or guidance concerning deep-seated landslides, it did not fully implement the rules. Thus, it was arbitrary and capricious. The Board moved to dismiss the action under CR 12(b)(6), arguing that adopting the revised manual was not a reviewable agency action. The Washington Forest Protection Association (WFPA) intervened and joined the Board's motion to dismiss.

Sumas Mountain submitted several declarations in support of its position that the Board Manual "implements" the forest practices rules. In these declarations, Kennard and two other scientists declared that, in their experience,

---

[1] The "adaptive management program" provides "science-based recommendations and technical information to assist the Board in determining" whether forest practices rules and guidance should be adjusted. WAC 222-12-045(1). It includes both a science and a policy component. WAC 222-12-045(2)(b). Following review through this program, a committee makes recommendations to the Board. WAC 222-12-045(2)(d)(v). Recommendations may include further research, a rule petition, or revised guidance. WAC 222-12-045(2)(d)(v).

it is necessary to follow the Board Manual to gain permit approval. Homeowners Holly Koon and Max Duncan declared that they were personally affected by the Board Manual because they lived in the Nooksack River valley, where deep-seated landslides had occurred in the past. They opined that, because of the manual's inadequate guidance, DNR would likely allow logging near their home, increasing the risk of a landslide.

The trial court ruled that adopting revisions to the Board Manual was not a reviewable "agency action" under the APA. The court issued a memorandum decision in which it stated that the State Supreme Court's opinion in WEA established a narrow definition of "agency action," and the Board Manual did not qualify because it was an "advisory technical supplement" that is not independently enforceable apart from the rules. The court stated that Sumas Mountain's contentions as to the importance of the Board Manual "may support an argument that the Manual is so legally significant that it constitutes an invalid rule, not adopted in accordance with the required rule-making procedures. However, Sumas does not advance this theory . . . ." The trial court granted the defendants' motion to dismiss.

## ANALYSIS

Sumas Mountain appeals the CR 12(b)(6) dismissal of its APA petition for judicial review. Dismissal for failure to state a claim is only appropriate if, presuming the plaintiff's allegations are true, it appears beyond a reasonable doubt that no facts exist that would justify recovery. Cutler v. Phillips Petroleum

Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994). We review the trial court's decision de novo.[2] Id.

The APA, chapter 34.05 RCW, governs judicial review of agency actions. It provides for review of an agency's rules, adjudicative orders, and "other agency action." RCW 34.05.570(2)-(4). The APA defines "agency action" as "licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits." RCW 34.05.010(3).

Sumas Mountain asserts that the Board Manual is reviewable as "other agency action" because it "implement[s]" the forest practices rules under RCW 34.05.010(3).[3] Sumas Mountain argues that the revised manual fails to fully implement those rules and is thus arbitrary and capricious. The parties agree that the court's test set out in WEA, 150 Wn.2d 612, governs the outcome here.

In WEA, the Public Disclosure Commission (PDC) issued guidelines interpreting the meaning and application of laws and rules governing the use of public facilities in campaigns. 150 Wn.2d at 615-16. Following input from stakeholder groups and discussion at public meetings, PDC revised the guidelines to provide an interpretative statement on the application of RCW

---

[2] Sumas Mountain asserts that, because of the declarations submitted below, we review the trial court's action as a decision on summary judgment. Submitting documents in addition to the pleadings generally converts a motion to dismiss into a motion for summary judgment. CR 12(b)(6). But where extraneous evidence is immaterial because the plaintiff fails to state a claim no matter what facts are proven, the motion remains one under CR 12(b)(6). Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 121, 744 P.2d 1032 (1987).

[3] Sumas Mountain does not argue that the Board's adoption of the manual constitutes the adopting of an agency rule under this provision.

42.17.130 to school districts and their employees. Id. at 616. A voluntary labor organization, WEA, sought judicial review under RCW 34.05.570(4). Id. The issue before the court was whether the guidelines were reviewable agency action. Id. at 614-15. PDC argued the guidelines were advisory and could not be violated or enforced. Id. Additionally, PDC asserted that in challenging the guidelines, WEA did not present an actual controversy but sought an advisory opinion. Id.

The WEA court drew a distinction between legally enforceable rules or orders and advisory agency documents. Id. at 618-19. The court noted that the legislature encourages agencies to issue interpretative statements advising the public of their "current opinions, approaches, and likely courses of action," as these assist the public in complying with statutes and rules. Id. (quoting RCW 34.05.230(1) and RCW 43.05.005). But, it ruled that an agency's written expression of its interpretation of the law is advisory only. Id. (citing RCW 34.05.230(1)). If a person does not follow a provision of such an advisory document, that conduct would not subject her to a penalty or other administrative sanction. Id. at 619. Thus, "an agency's written expression of its interpretation of the law does not implement or enforce that law." Id.

To determine whether the challenged guidelines were reviewable agency action, the WEA court considered the manner in which the document was adopted, its purpose, its language, and any attempt by the agency to enforce the provisions of the document. Id. at 620-22. In that case, the guidelines were

adopted without formal procedures. Id. at 621. The stated purpose of the guidelines was to assist school districts in complying with statutes and regulations concerning election campaigns. Id. at 620. The guidelines included a list of considerations to aid readers in determining whether a specific action was permissible under the law. Id. at 621. The text indicated that the guidelines had to be read in conjunction with the laws and rules. Id. There was no evidence that PDC had acted to enforce the guidelines. Id. at 622. The WEA court held that under these circumstances, the guidelines did not amount to agency action and WEA failed to present a justiciable controversy:

> In this case, whether the guidelines are a correct or incorrect interpretation of the law presents nothing more than an academic or hypothetical question. The guidelines have no legal or regulatory effect, and the PDC's issuance of the guidelines does not implicate actual or direct legal interests of the WEA. The WEA has not alleged an actual, present, existing dispute, or the seeds of a mature one and its claims are not justiciable.

Id. at 623.

In this case, as in WEA, the Board adopted revisions to its technical manual without following formal rule-making procedures. The Board Manual uses advisory, rather than directive, language. Section 16 states that it is "an advisory technical supplement" to the rules and "contains guidelines to evaluate potentially unstable slopes and landforms on forest lands." The section includes illustrations, photographs, diagrams, and technical descriptions to aid in determining whether a specific area is an unstable slope or landform within the meaning of the rules. The text of the Board Manual states that it must be read in conjunction with the forest practices rules. WAC 222-16.050(1)(d)(i). And, as to

enforceability, the parties agree that the agency can take no enforcement action based on the manual.

Like the guidelines in WEA, the Board Manual is a guidance document that does not purport to have the force of law and is not independently enforceable. 150 Wn.2d at 622. We conclude that revision of the Board Manual is not "agency action" within the meaning of RCW 34.05.570(4). And, because the manual has no legal effect, revision of the Board Manual does not present a justiciable controversy. See id. at 623.

Sumas Mountain attempts to distinguish the Board Manual from the guidelines in WEA on several grounds. First, it argues that the manual is the same type of "other agency action" that this court reviewed in Muckleshoot Indian Tribe v. Dep't of Ecology, 112 Wn. App. 712, 50 P.3d 668 (2002). The argument is without merit.

Muckleshoot concerned an Interstream Flow Agreement (IFA) between the City of Seattle and several state and federal agencies. Muckleshoot, 112 Wn. App. at 716. The Department of Ecology entered into the IFA, agreeing not to use its regulatory authority to alter water flow requirements for the life of the agreement. Id. at 718. The issue on appeal was whether Ecology's participation in the IFA was reviewable under the APA or whether it was excluded from review as a "sale, lease, contract, or other proprietary decision in the management of public lands." Id. at 719 (internal quotation marks omitted) (quoting RCW 34.05.010(3)).

The Board Manual in this case is not like the IFA in <u>Muckleshoot</u>. The manual is not an agreement that restricts the Board from exercising regulatory authority. And there is no dispute, in this case, that the manual is exempt from review as a proprietary decision.

Sumas Mountain next argues that the Board Manual is agency action because it is required by rule and by statute. Sumas Mountain relies on WAC 222-12-090, which directs DNR to prepare revisions to the Board Manual, describes the manual as "an advisory technical supplement" to the rules, and specifies that the manual "shall include . . . **Guidelines** for evaluating potentially unstable slopes and landforms." WAC 222-12-090(16). Sumas Mountain also relies on RCW 76.09.040(3)(c), which directs the Board to provide technical guidance concerning fish protection in the manual. But neither the rule nor the statute indicates that the manual has any legal effect. Rather, these refer to the manual as "guidelines" and "guidance." Sumas Mountain provides no support for the proposition that, when a rule directs the agency to propound a guidance document, the resulting document constitutes "agency action."

Next, Sumas Mountain contends the Board Manual is agency action because the rules and the manual operate in tandem so that the rules cannot be enforced without reference to the Board Manual.[4] We find little support in law or the record for this argument. Under RCW 76.09.050(5), when DNR denies a

---

[4] At oral argument, Sumas Mountain argued that the manual modifies the forest practice rules relating to the types of landslides subject to SEPA review. We find no support in the record for this contention.

forest practices application, it must notify the applicant of the specific provisions of the statute or the forest practice regulations with which the applicant has failed to comply. There is nothing to suggest that DNR must evaluate the application based on any provision within the Board Manual.

WAC 222-16-050 defines the classes of forest practices that may trigger SEPA review. Each geologic term discussed in WAC 222-16-050(1)(d), the rule relating to timber harvesting on potentially unstable slopes, has a rule-based definition in WAC 222-16-010. This rule refers the reader to the Board Manual for "more descriptive definitions," but the Board Manual contains "general background information for all readers on how to recognize the various landslide types in Washington State (Part 2), how slope form affects slope stability (Part 3), and how to recognize potentially unstable slopes and landforms (Part 4)." CP 49. Pictures, diagrams and figures have been included to help the reader understand the basic geological concepts the Manual describes. Other parts of the Manual describe typical procedures and available resources "for conducting reviews and assessments of potentially unstable areas," and "guidance to the work of qualified experts" in conducting reviews and field assessments and preparing geotechnical reports. CP 49, 75. The language of the Manual is descriptive, rather than prescriptive, in nature.

While there is a glossary of geologic terms at the end of Section 16, there is no suggestion that the regulatory definitions of WAC 222-16-010 are unenforceable unless read in tandem with the Manual's glossary. Sumas

Mountain has not demonstrated that DNR must refer to or rely on any material in the Board Manual to fully implement any of the forest practice regulations.

Sumas Mountain also relies on administrative decisions, arguing that these demonstrate that DNR is bound by the Board Manual. But, these administrative decisions concern review of a permitting decision. They do not establish that the manual is independently enforceable or that revision of the manual is an agency action. See, e.g., Pacific Denkmann Co. dba Pilchuck Tree Farm v. DNR, 2006 WL 2679656, *2-4, *8 (Wash. Forest. App. Bd. Sept. 12, 2006) (rejecting a challenge to a permit denial where the applicant did not submit a proposal to change a water type determination and did not provide survey information prepared by a qualified person using scientific methodology, as outlined in the Board Manual); Tucker Trading, Inc., v. Dep't of Nat. Res., 1994 WL 905452 (Wash. Forest App. Bd. April 20, 1994) (quoting a rule that references the manual).

Finally, Sumas Mountain argues that judicial review should be available as a matter of policy. Sumas Mountain asserts that, without judicial review, the Board may circumvent rulemaking and effectively regulate forestry activity through a judicially-immune manual. We reject the argument.

An agency document that has regulatory force may be challenged as a rule under the APA "despite bearing some other label." McGee Guest Home Inc., v. Dep't of Social and Health Services, 142 Wn.2d 316, 322, 12 P.3d 144 (2000). A de facto rule is thus not immune from judicial review. In this case, as

the trial court noted, Sumas Mountain chose not to advance the theory that the Board Manual is a de facto rule and hence invalid. Instead, Sumas Mountain's theory is that the manual is not sufficiently rule-like. Sumas Mountain objects to the Board Manual's use of advisory language, its failure to impose a specific landslide screening tool, and its inclusion of several landslide analyses as optional, rather than mandatory, steps.

We conclude that the revision of the Board Manual was not "agency action" within the meaning of RCW 34.05.010(3). Because of our resolution of this issue, we do not address the parties' arguments as to justiciability.

Affirmed.

WE CONCUR:

_Andrus, J._

_Becker, J._